# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| Environmental Safety Consultants, Inc. | ) | ASBCA No. 58343 |
| | ) | |
| Under Contract No. N62470-95-B-2399 | ) | |

APPEARANCE FOR THE APPELLANT:     Mr. Peter C. Nwogu
                                                         President

APPEARANCES FOR THE GOVERNMENT:     Ronald J. Borro, Esq.
                Navy Chief Trial Attorney
                Ellen M. Evans, Esq.
                Senior Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE FREEMAN

Environmental Safety Consultants, Inc. (ESCI), appeals the deemed denial of its settlement proposal/claim for the government's convenience termination of the captioned contract (hereinafter "Contract 2399"). The government contends that ESCI's claim is not based on its actual incurred costs but on prices, and that it has not proven its actual incurred costs as required by the termination clause of the contract. ESCI responds in pertinent part[1] that (i) the convenience termination did not convert the firm-fixed-price contract into a cost-reimbursement contract, and (ii) the contract changes and costs that were incurred for each of the six Bid Items were negotiated and settled and are not subject to further actual cost determination. We find no merit in appellant's argument. We find that the incurred costs of the terminated work with a reasonable profit thereon are less than the progress payments made by the government, and that the settlement expenses have not been proven in any amount. Accordingly, we deny the appeal.

---

[1] We say in pertinent part because most of ESCI's brief is devoted to its claims for contract time and price adjustments and for breach of contract damages that were not submitted to the contracting officer for decision within six years of accrual as required by the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 7103(a)(1) and (4)(A), or otherwise were settled by mutual agreement in bilateral Modification No. P00006 to the contract. *See Environmental Safety Consultants, Inc.*, ASBCA No. 58343, 14-1 BCA ¶ 35,681, and finding 3 below.

# FINDINGS OF FACT

## A. Submission of the Termination for Convenience Settlement Claim to the Contracting Officer

1. Contract 2399 was awarded to ESCI on 13 November 1995. The contract required ESCI to remove old and install new underground and above ground fuel storage tanks at the Naval Weapons Station (NWS), Yorktown, Virginia. The total contract price at award was $561,764.25. The specified contract completion date was 16 August 1996. The contract schedule consisted of six priced "Bid Items." Bid Item 0001A was a firm-fixed-price item in the amount of $358,754 for "the entire work, complete in accordance with the drawings and specifications, but excluding work described in Bid Items 0001B, 0001C, 0001D, 0001E and 0001F." The Bid Items excluded from the work under Bid Item 0001A were unit priced items per gallon for removal and disposal of specified quantities of fuel (0001B), sludge material (0001C), and water contaminated petroleum (0001D), and per cubic yard for specified quantities of petroleum contaminated soil (0001E and 0001F). (R4, tab 1 at 15, 16, 29)[2]

2. ESCI began work on the site on 2 April 1996 and performed the work with its own personnel until 10 October 1996. At that time ESCI had missed the specified completion date and to avoid a termination for default, it agreed to subcontract the entire completion of the work to a competent subcontractor. From November 1996 to 16 June 1997, Rickmond Environmental, Inc., performed the contract work as a subcontractor to ESCI. Rickmond stopped performance after 16 June 1997 because ESCI failed to pay Rickmond invoices in the amount of $114,239.60. *See Environmental Safety Consultants, Inc.*, ASBCA No. 51722, 11-2 BCA ¶ 34,848 at 171,429-30, findings 12-19.

3. On 24 June 1997, ESCI and the government, in bilateral Modification No. P00006, agreed to the following changes to the contract:

> 1. The contractor shall provide all materials, labor, and equipment to accomplish the following:
>
> PCO-01:
>
> a. Delete Bid Item 0001B, fuel removal.
>
> b. Provide 36,210 gallons of fuel removed.
>
> c. Delete Bid Item 0001E, contaminated soil removal

---

[2] All Rule 4 citations refer to the Rule 4 filed in ASBCA No. 51722.

<500 ppm.

d.  Delete Bid Item 0001F, contaminated soil removal >500 ppm.

e.  Provide 1,000 CY of contaminated soil removal.

f.  Remove a 120-gallon UST and demolish the existing washrack at Building 1828.

g.  Delete the removal of Tank No. 714.1, as shown on NAVFAC Drawing #4307235.

h.  Delete the installation of Tank No. 709.6, as shown on NAVFAC Drawing #4307235.

i.  Provide the in-place closure of three (3) USTs, Tank Nos. 719, 1828, and 2006.

j.  Subcontract all remaining work, including supervision, quality control, and punchlist items.

k.  Provide additional overhead costs incurred due to subcontracting.

l.  Remove an 8,000-gallon UST, Tank No. 457.2, as shown on NAVFAC Drawing #4307231.

m.  Provide additional labor and time for entering, leaving, and working in the Q-Area.

n.  Provide extended overhead for the Government delays under this contract.

2.  TOTAL AMOUNT OF ADDITIONAL WORK
    $199,301.00

    TOTAL AMOUNT OF CREDITS
    $199,192.00

The total contract price is increased by $109.00 from $561,764.25 to $561,873.25.

3

The contract completion date is extended 308 calendar days from August 26, 1996, to June 30, 1997.

The foregoing is agreed to as constituting full and equitable adjustment and compensation (both time and money) attributable to the facts of [sic] circumstances giving rise to the change directed hereby, including, but not limited to, any changes, differing site conditions, suspensions, delays, rescheduling, accelerations, impact, or other causes as may be associated therewith.

(R4, tab 2 at 11-12)

4. No work on the contract was performed after 16 June 1997. After 12 months of fruitless negotiation with ESCI to restart and complete the work, the government on 12 June 1998 terminated Contract 2399 "completely" for default (R4, tab 2 at 13). At termination, none of the Bid Items on the Contract Schedule had been completed and accepted for final payment by the government (R4, tab 14 at 17). On 26 August 1998, ESCI appealed the default termination to this Board. That appeal was docketed as ASBCA No. 51722. On 28 September 2011, the Board sustained the appeal. Pursuant to paragraph (c) of the FAR 52.249-10, DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984) clause of the contract, this decision converted the default termination to a termination for convenience of the government. *See Environmental Safety Consultants*, 11-2 BCA ¶ 34,848 at 171,433. Familiarity with that decision is presumed.

5. The FAR 52.249-2, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (APR 1984)–ALTERNATE I (APR 1984) clause of Contract 2399 stated in pertinent part:

> (d) After termination, the Contractor shall submit a final termination settlement proposal to the Contracting Officer in the form and with the certification prescribed by the Contracting Officer....
>
> (e) Subject to paragraph (d) above, the Contractor and the Contracting Officer may agree upon the whole or any part of the amount to be paid because of the termination. The amount may include a reasonable allowance for profit on work done. However, the agreed amount, whether under this paragraph (e) or paragraph (f) below, exclusive of costs shown in subparagraph (f)(3) below, may not exceed the total contract price as reduced by (1) the amount of payments previously made and (2) the

4

contract price of work not terminated. The contract shall be amended, and the Contractor paid the agreed amount. Paragraph (f) below shall not limit, restrict, or affect the amount that may be agreed upon to be paid under this paragraph.

(f) If the Contractor and Contracting Officer fail to agree on the whole amount to be paid the Contractor because of the termination of the work, the Contracting Officer shall pay the Contractor the amounts determined as follows, but without duplication of any amounts agreed upon under paragraph (e) above:

(1) For contract work performed before the effective date of termination, the total (without duplication of any items) of –

(i) The cost of this work;

(ii) The cost of settling and paying termination settlement proposals under terminated subcontracts that are properly chargeable to the terminated portion of the contract if not included in subdivision (i) above; and

(iii) A sum, as profit on (i) above, determined by the Contracting Officer under 49.202 of the Federal Acquisition Regulation, in effect on the date of this contract, to be fair and reasonable; however, if it appears that the Contractor would have sustained a loss on the entire contract had it been completed, the Contracting Officer shall allow no profit under this subdivision (iii) and shall reduce the settlement to reflect the indicated rate of loss.

(2) The reasonable costs of settlement of the work terminated, including –

(i) Accounting, legal, clerical, and other expenses reasonably necessary for the preparation of termination settlement proposals and supporting data;

(ii) The termination and settlement of subcontracts (excluding the amounts of such settlements); and

> (iii) Storage, transportation, and other costs
> incurred, reasonably necessary for the preservation,
> protection, or disposition of the termination inventory.
>
> ....
>
> (h) The cost principles and procedures of Part 31 of
> the Federal Acquisition Regulation, in effect on the date of
> this contract, shall govern all costs claimed, agreed to, or
> determined under this clause.

(R4, tab 1 at 69)

6. On 5 July 2012, ESCI submitted to the contracting officer a Standard Form (SF) 1436 "Settlement Proposal (Total Cost Basis)" for the termination for convenience. The settlement proposal requested a net payment of $1,183,366.59. The largest item in the proposal was $1,021,306.13 for "DIRECT LABOR." The proposal was signed and certified by ESCI's President/CEO (Mr. Peter Nwogu). The certification stated that: "the charges as stated are fair and reasonable." (App. supp. R4, tab 1, vol. I, tab 3 at 1, 4)

7. On 14 September 2012, ESCI converted its termination settlement proposal to a termination settlement claim under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. The contracting officer refused to either negotiate a settlement agreement or issue a final decision on the claim. She alleged that the claim was "conceived in fraud and is permeated by fraud" and that she lacked authority to either settle or decide the claim. On 29 September 2012, ESCI appealed the deemed denial of the claim to this Board. The appeal was docketed as ASBCA No. 58343. *See Environmental Safety Consultants*, 14-1 BCA ¶ 35,681 at 174,666.

## B. Submission of the Claim for DCAA Audit

8. On 22 March 2013, ESCI's 5 July 2012 termination settlement claim was submitted by the contracting officer for audit by the Defense Contract Audit Agency (DCAA) (Bd. ex. 1 at 4). Initially, ESCI refused to cooperate with an audit. On 10 July 2013, the Board ordered ESCI to provide, as requested by the auditor, all books and records relevant to the claim (Bd. corr. file). ESCI provided its books and records to the government, and a "walk-through" of the termination settlement claim was conducted by the DCAA with ESCI's president on 22 August 2013 (Bd. corr. file, ltr. dtd. 8 November 2013).

9. At the 22 August 2013 "walk-through" meeting, the assigned auditor (Mr. Horton) questioned Mr. Nwogu about the $1,000,000 item for direct labor. At hearing, Mr. Horton testified as to the discussion of this issue as follows:

6

MR. HORTON: ...When Mr. Nwogu was discussing the contract correspondence, I asked several times about the $1 million because it's a significant amount in comparison to the contract value, so it definitely raises that area of concern.

While questioning Mr. Nwogu about that $1million, I was told that I did not understand or I was not listening. He was angry and irritated. At one point, my supervisor and branch manager actually left the conference room. I think they had to go get some documents and I continued to ask Mr. Nwogu about the proposed line items for the direct labor. Mr. Nwogu became very agitated, walked around the actual conference room table and grabbed my chair and began shaking it while he was shouting this is the labor.

JUDGE FREEMAN: While you were sitting in it?

MR. HORTON: Yes, yes, while I was sitting in it, he grabbed the arm of it and started shaking it very violently while shouting this is labor.

But going back to the $1 million, we were able to derive that it was based on contract price based upon the four hour walk through and that it contained multiple cost elements such as direct labor, materials, other costs.

At one point during the walk through, Mr. Nwogu asserted that it was the estimated total contract price assuming that he were to complete the contract and that he was entitled to the full amount of money regardless of how much the contract–regardless of how much of the contract work was completed or how much...costs he incurred because it was a firm fixed price contract.

(Tr. 2/334-35)

10. At the 22 August 2013 walk-through meeting, the DCAA personnel also inquired about the $252,503.97 for "SETTLEMENT WITH SUBCONTRACTORS" in Item 14 of the SF 1436. Mr. Horton testified on that issue as follows:

We inquired about that amount and Mr. Nwogu informed us that there wasn't a subcontractor proposal [and] that he

7

estimated the cost for him to complete that particular effort based upon contract price, he stated that it was work that he lost out on because another contractor performed the effort and therefore, he priced that work using the contract price as assuming that he had completed the work. So that's how he derived the $252,000.00.

(Tr. 2/336-37)

11. Following the walk-through meeting, the DCAA evaluated the adequacy of the claim for audit. Mr. Horton described the adequacy evaluation as follows:

We evaluated the termination claim for adequacy and we conducted the walk through as well and based upon the results of those two items, we determined that the termination claim was inadequate for audit.

During our evaluation we discovered that the claim was based on contract price as compared to costs incurred. Also, the contractor co-mingled cost elements in the line item for direct labor. Those were the most significant of the issues discovered during the walk through and the adequacy assessment.

(Tr. 2/329)

12. On 24 February 2014, DCAA issued a "Basis For Disclaimer of Opinion" report stating in pertinent part that:

Based upon the results of our adequacy evaluation, we determined that ESCI's July 5, 2012 termination for convenience settlement proposal does not comply with the requirements of FAR 49.206-2(b)(2), Bases for Settlement Proposals, and FAR 49.206-1(c), Submission of Settlement Proposals, and therefore, is inadequate.

ESCI's termination for convenience settlement proposal was not prepared using actual costs incurred through the effective date of the termination, but instead was based on an estimated increased contract price....

....

8

Due to the significance of the proposal inadequacies discussed in the Basis for Disclaimer of Opinion section, we were unable to perform an audit or alternative procedures sufficient in scope to enable us to express, and we do not express, an opinion on whether the proposed costs and supporting data complies in all material respects with the applicable requirements in the Federal Acquisition Regulations (FAR)....

(Bd. ex. 1 at 4-5)

## C. Pre-Hearing Discovery

13. On 4 April 2014, the government served 24 discovery requests on ESCI with respect to the records supporting the 5 July 2012 termination claim (Bd. ex. 3). On 13 April 2014, ESCI responded to the government's discovery requests with the following message to the government and Board:

> Appellant is asking the Board to immediately direct Ms. Evans [government counsel] to come down here and inspect and make copies of appellant's accounting records. Ms. Evans lies to you could be exposed, if she can come down and make copies. In previous dispute she came down with DCAA and made copies. That avoided or prevented her lies that appellant did not cooperate by providing ESCI's accounting or contract documented records. The lies need to stop. It is really a shame that the Board can believe lies from Ms. Evans. Appellant is tired of listening to lies that are racially motivated.
>
> Attached is appellant's response to Ms. Evans discovery request and appellant is waiting for her to come and make copies and inspect records.

(Bd. corr. file, email dtd. 13 April 2014)

14. The attachment to ESCI's 13 April 2014 response consisted of argumentative allegations that the requested documents had been provided to the DCAA, or that they did not exist or that they were irrelevant to the issues in the appeal (Bd. corr. file).

15. By order dated 30 April 2014, the Board noted a possible lack of jurisdiction over the claimed increased costs in ESCI's Termination Settlement claim

in excess of the contract price ($561,873.25) at termination. The parties were directed to submit briefs on the issue. (Bd. corr. file)

16. On 20 May 2014 the Board ordered ESCI to respond to ten of the government's 4 April 2014 discovery requests (Bd. ex. 4). ESCI responded to the order between 19-25 June 2014 (Bd. corr. file; Bd. ex. 5). The response denied that ESCI had a job cost ledger for the contract and was otherwise such that the government on 10 July 2014 moved to dismiss the appeal for ESCI's failure to comply with the order (Bd. ex. 5 at Item 1; Bd. corr. file).

17. On 2 July 2014, ESCI submitted a revised SF 1436 for its Termination Settlement Claim to the contracting officer. The revised claim, among other things, reduced the claimed "DIRECT LABOR" from $1,021,306 to $507,322, and the net payment requested from $1,183,366.59 to $364,536.45 (Bd. ex. 6 at 6). While the amount of direct labor was substantially reduced, the methodology of the claim was still based on price and not on incurred cost (tr. 2/346-47).

18. On 25 July 2014 the Board granted in part a government motion to dismiss the appeal to the extent of the claimed costs of performance in excess of the contract price at termination. *See Environmental Safety Consultants*, 14-1 BCA ¶ 35,681 at 174,668. Familiarity with that decision is presumed.

19. On 19 September 2014 the hearing for the appeal was set for 17-18 November 2014. By order dated 15 October 2014, the hearing was limited to the issue of whether ESCI's 5 July 2012 Termination Settlement Proposal/Claim "is allowable, proven as to amount and in compliance with the FAR 52.249-2 Termination for Convenience of the Government (Fixed[-]Price) (Apr 1984)–Alternate I clause of the contract and FARs applicable thereto." (Bd. corr. file)

20. On 23 October 2014, the Board denied the government's 10 July 2014 motion to dismiss for ESCI's failure to comply with the Board's 20 May 2014 discovery order, but did impose a sanction for the non-compliances. The sanction was that: "no documents or testimonial evidence, other than the testimony of Mr. Nwogu, that should have been, but were not disclosed by ESCI in its responses to the discovery order will be allowed to be offered by appellant for admission into evidence at the hearing." *See Environmental Safety Consultants, Inc.*, ASBCA No. 58343, 14-1 BCA ¶ 35,786 at 175,047, 175,051. Familiarity with that decision is presumed.

21. By Board orders dated 23 October, 27 October and 5 November 2014, all documents and testimony admitted in evidence in the default appeal (ASBCA No. 51722), ESCI's 5 July 2012 Termination Settlement Proposal/Claim (previously identified as app. supp. R4, tab 1) and Board Exhibits 1 through 6, were admitted in evidence for the present appeal on the termination settlement claim (ASBCA No. 58343) (Bd. corr. file).

22. The Board order of 27 October 2014 also required that all other documents proposed by the parties for hearing exhibits be provided to the opposing party and to the Board no later than 5 November 2014. The government complied with that order delivering 28 proposed hearing exhibits (approximately 673 pages) on 5 November 2014 (Bd. corr. file). ESCI did not comply with the order. Starting on 11 November 2014 and concluding on the early morning of the first day of the hearing on 17 November 2014, ESCI made 23 separate submissions totaling 348 pages of proposed hearing exhibits (Bd. corr. file). At hearing, the presiding judge told ESCI that any documents submitted for evidence after 5 November 2014 would be accepted only as offers of proof and would not be considered as evidence in the decision on this appeal (tr. 1/8-9).[3]

## D. ESCI's Claimed Settlement Items

23. At the start of the hearing on 17 November 2014, ESCI requested that the hearing consider both its 5 July 2012 termination settlement claim and its 2 July 2014 amendment of that claim. The government did not object and the presiding judge ruled that both would be considered. (Tr. 1/8-9)

24. For Item 1, "DIRECT MATERIAL," ESCI claims no amount in either its 5 July 2012 claim or in its 2 July 2014 amendment. For Item 2, "DIRECT LABOR," ESCI claims $1,021,306.13 in its 5 July 2012 claim and $507,322.00 in its 2 July 2014 amended claim. (App. supp. R4, tab 1, vol. 1, tab 3 at 1; Bd. ex. 6 at 6)[4] At hearing, ESCI's president testified that "everything was included, including material and everything was included in that labor" (tr. 1/96-97). He further testified that from 15 December 1995 to October 1996, the "labor and labor-related expenses for this project is $154,261.64" (tr. 1/116).[5]

25. The Board's 20 May 2014 discovery order Item 5 required ESCI to: "Provide complete, legible copies of all payroll records and time-keeping records for this contract including, but not limited to, all certified payrolls for ESCI and for each subcontractor" (Bd. ex. 3 at 3, ex. 4 at 3). The payroll records provided by ESCI in

---

[3] Post-hearing, ESCI has submitted an additional 1,500 plus pages of proposed exhibits for offer of proof (Bd. corr. file 25 Nov. – 16 Jan. 2015). These documents were not ruled on by the Board and hence the government's motion to strike is moot.

[4] These two citations refer respectively to the SF 1436 on which ESCI's 5 July 2012 termination settlement claim and its 2 July 2014 amended termination settlement claim were asserted. The citations are applicable to, but will not be repeated in, the findings on the SF 1436 claim items that follow.

[5] In October 1996, ESCI subcontracted all remaining work to Rickmond Environmental, Inc., to avoid a default termination (*see* finding 2).

11

response to Item 5 were not the weekly certified payrolls for work on Contract 2399 required by the FAR 52.222-8, PAYROLLS AND BASIC RECORDS (FEB 1988) clause of the contract.[6] The payroll records provided in the response to discovery order Item 5 showed for each worker the gross hours worked and gross pay for the work for the pay period, but did not indicate the job on which the work was performed. In 1996, ESCI had six other jobs having a total contract value of $1,369,420 in addition to Contract 2399 (ex. G-6). The total man hours in the ESCI payrolls provided in Item 5 were 3,739.70. The total gross payroll shown for those hours was $45,033.85. (Bd. ex. 5, Item 5 at 6, 26, 127, 156, 297, 311, 320, 321, 325, 341, 351, 362, 369, 379, 401)

26. The daily Contractor Construction Reports on Contract 2399 prepared by the ESCI site superintendant named the workers present, their specific trade, their specific tasks performed and their specific hours worked. At hearing, the government's construction management expert witness, Charles Heckman, testified that the daily reports showed 3140.8 total labor hours and a gross direct labor cost incurred by ESCI for Contract 2399 on the construction site from April through October 1996 of $38,830.47. (Ex. G-27 at 18; tr. 2/285-93)

27. The testimony of ESCI's president that the direct labor cost was $154,261.64 left unexplained the remaining $867,044.49 in "DIRECT LABOR" claimed by ESCI in its 5 July 2012 claim and the remaining $353,060.36 in "DIRECT LABOR" claimed in its 2 July 2014 amended claim. The government expert witness Mr. Heckman compiled a register of all ESCI checks to its subcontractor Rickmond and to various equipment and service suppliers that were provided by ESCI in the response to the 20 May 2014 discovery order and in the record of ASBCA No. 51722. The total amount of these checks ($178,348.78), less duplicates, checks for other projects, and checks comingling costs incurred for other projects ($49,894.13) was $128,454.65. (Ex. G-28; tr. 2/293-96)

28. For Item 5 "OTHER COSTS (from Schedule B)," ESCI claims $13,000 in its 5 July 2012 claim, and $23,675 in its 2 July 2014 amended claim. ESCI's explanation in Schedule B of its 5 July 2012 claim is: "Costs after June 30, 1997" and "Volumes 1 & II & III Files," "Rule 4 Files" and "Table 1 & II Attached" (app. supp. R4, tab 1, vol. I, tab 3 at 2). Tables I and II are price and estimated "incurred" cost schedules for the proposed termination settlement. We find no explanation of the alleged $13,000 "OTHER COSTS" in any of the referenced documents, and no evidence that the $13,000 is an actual incurred cost supported by invoices or cancelled checks identifiable on their face as being for work on Contract 2399.

29. ESCI's explanation in Schedule B of its 2 July 2014 amended claim for "OTHER COSTS" is "Materials left in the trailer at work site" ($300); "Construction

---

[6] (See R4, tab 1 at 56).

12

equipment left on site" ($200); "Labor contract management Table 20-9" ($23,175) (Bd. ex. 6 at 7). The materials left on site are described as "safety gears, overal[l], coats, boots, gloves, etc." The construction equipment left on site is described as "shovels, buckets, hoses, pumps, HNU, sheet." (*Id.*) In the absence of any evidence that the described materials and equipment were unique for the Contract 2399 work and of no value otherwise, or that the government refused to allow ESCI to remove its materials and construction equipment when the contract was terminated, ESCI's abandonment of the materials and equipment was not a cost of the work. Table 20-9 is a listing by week from the last week of June 1997 to the second week of June 1998 of the hours and hourly rate for "Management" in each week.[7] The hourly rate for all hours is $75. (*Id.* at 15) However, there are no job cost accounting records maintained in the ordinary course of business or other objective evidence that the claimed amount of $23,175 was actually paid by ESCI or otherwise incurred as a legal liability (see finding 16). On this record, we find the Item 5 "OTHER COSTS" in both ESCI's 5 July 2012 claim and in its 2 July 2014 amended claim unproven in any amount.

30. For Item 6, "GENERAL AND ADMINISTRATIVE EXPENSES (from Schedule C)" ESCI claims $17,000 in its 5 July 2012 claim, and $22,709.32 in its 2 July 2014 amended claim. ESCI's "DETAIL OF EXPENSES" in Schedule C of the 5 July 2012 claim is: "Delays 32 months. See Volume 1 & II & III Files. See Rule 4 Files Documentation. See Tables 1 & II." ESCI's "METHOD OF ALLOCATION" in Schedule C is: "administrative costs." (*Id.*) "Administrative costs" is not a method of allocation. We find no support for the proposed $17,000 in G&A expenses in the Schedule C references which are the same as in Finding 27 for "OTHER COSTS." Moreover, Item No. 3 in the Board's 20 May 2014 discovery order stated: "Provide a complete, legible copy of ESCI's general corporate ledger for the years 1995 through 1998" (Bd. ex. 3 at 3, ex. 4 at 3). ESCI did not provide a copy of its general corporate ledger (Bd. ex. 5, tab 3). Without the general corporate ledger, detailing the specific expenses in the G&A cost pool, and without the supporting payroll, invoices and cancelled checks for those expenses, we find the claimed expenses unproven in any amount. ESCI's Schedule C in its 2 July 2014 claim states that its G&A claim is derived from the Eichleay Formula. However, since the amount of the G&A cost pool has not been proven in any amount, there is nothing that the Eichleay Formula can be applied to.

31. For Item 7, "TOTAL COSTS (Items 1 thru 6)," ESCI claims $1,051,306 in its 5 July 2012 claim, and $553,706.32 in its 2 July 2014 amended claim, as the sum of its claimed proposed direct labor, other costs and G&A costs. On the evidence cited above, we find that the direct labor incurred cost is no more than $38,830.47 and other

---

[7] While the table purports to show management direct labor for June 1997 to June 1998, the title says it is for "Pre-Termination Labor in Contract Management June 2012 – June 18 2014."

13

direct costs are no more than $128,454.65. The "OTHER COSTS" and "GENERAL AND ADMINISTRATIVE EXPENSES" in the 5 July 2012 and 2 July 2014 claims are not proven in any amount. Accordingly, Item 7 is not more than $167,285.12.

32. For Item 8, "PROFIT (Explain in Schedule D)," ESCI claims $155,145.90 in its 5 July 2012 claim, and $6,958.00 in its 2 July 2014 amended claim. ESCI's explanation in Schedule D of the 5 July 2012 claim is: "Subcontractor Profits 199,599.80," "Terminated work loss 198,850.55," and "See Volume II [sic], II & III Attached: Rule 4 File Documentations" (app. supp. R4, tab 1, vol. I, tab 3 at 2). We find no rational connection between the claimed profit amount and the explanation in Schedule D. Pursuant to paragraph (f)(1)(iii) of the FAR 52.249-2, Termination for Convenience of the Government (Fixed-Price) (Apr 1984)–Alternate I clause of the contract, and FAR 49.202 referenced therein, the profit on a termination settlement is to be determined under FAR 49.202 in effect on the date of the contract to be fair and reasonable. However, FAR 49.202(a) also expressly prohibits profit on settlement expenses, anticipatory profits and consequential damages. ESCI's claimed profit is 14.76 percent of its claimed total costs of $1,051,306. That same profit percentage applied to our finding of a proven total cost of no more than $167,285.12 would allow a profit of $24,691.28. We consider that amount to be fair and reasonable.

33. For Item 9, "TOTAL COSTS (Items 7 and 8)," ESCI claims $1,206,452.03 in its 5 July 2012 claim, and $560,664.32`in its 2 July 2014 amended claim. We have found above (findings 31, 32) a proven total for Items 7 and 8 of no more than $191,976.40.

34. For Item 10, "DEDUCT FINISHED PRODUCT INVOICED OR TO BE INVOICED," ESCI claims $268,326.62 in its 5 July 2012 claim, and $507,322.00 in its 2 July 2014 amended claim. At termination, however, none of the six priced Bid Items had been completed and accepted for final payment by the government (*see* finding 4). Therefore, there were no finished products invoiced or to be invoiced.[8] The amounts claimed by ESCI are progress payment amounts which to the extent actually paid by the government ($303,990.20) are to be included in Item 18 of the SF 1436 "ADVANCE, PROGRESS & PARTIAL PAYMENTS (from Schedule H)," and not as finished product invoices under Item 10.

35. For Item 11, "TOTAL (Item 9 less Item 10)," ESCI claims $938,125.41 in its 5 July 2012 claim and $53,342.32 in its 2 July 2014 amended claim. We have

---

[8] One of the Item 10 amounts in the 2 July 2014 amended claim was $135,102 for alleged "Contract work completed, accepted and verified for changed work PCO-01 payment by government Pursuant to Contract Modification P00006 of June 23/24, 1997" (Bd. ex. 6 at 10). This claim is patently without merit. The net contract price increase for all PCO-01 work under Modification No. P00006 of the contract was $109.00, not $135,102 (*see* finding 3).

14

found that at contract termination there was no finished product invoiced or to be invoiced. Accordingly, we find Item 11 to be $191,976.40.

36. For Item 12, "SETTLEMENT EXPENSES (from Schedule E)," ESCI claims $175,248.40 in its 5 July 2012 claim, and $200,262.73 in its 2 July 2014 amended claim. On Schedule E in its 5 July 2012 claim, ESCI describes its settlement expenses as "Consultations 6/30/97 – 6/12/98" and as "ESCI standby costs. See Volume III Documentation. See Rule 4 File." Volume III of the 5 July 2012 claim is entitled in pertinent part "ESCI's Incurred Costs from June 30, 1997 thru June 12, 1998" (app. supp. R4, tab 1, vol. III at 1). We have found nothing in Volume III supporting a cost of $175,000 for "SETTLEMENT EXPENSES" as defined in Alternate I, paragraph (f)(2) of the Termination for Convenience clause of the contract (*see* finding 5).

37. In Item 12, Schedule E, of the 2 July 2014 amended claim, ESCI claims the following amounts: $36,975 for "Labor in preparation for T4C Table 20-10," $6,000 for "Consultant," $8,000 for "Home office use," $103,935.73 for "Legal fees Item No. 20-14 Exhibits," $26,102 for "Legal fees in administration of contract," $5,000 for "Documents preservations," and $14,250.12 for "Response Item 20-6 Exhibit." Table 20-10 in the 2 July 2014 amended claim is a summary listing by week from the first week of June 2012 to the fourth week of June 2014 of the hours worked at $75 per hour for preparing the termination for convenience claims (Bd. ex. 6 at 16-17). There are no contemporaneous time sheets or other evidence supporting the Table 20-10 summary. There are no invoices or other evidence supporting the claimed "Consultant" cost, the claimed "Documents preservations" cost, the claimed "Home office use" cost, the claimed "Legal fees in administration of contract" or the claimed "Response Item 20-6 Exhibit." The "Legal fees Item No. 20-14 Exhibits" do not support any amount of the $103,935.73 claimed as a "settlement expense." The 20-14 Exhibits are 193 pages of legal billings. One hundred twenty-four (124) of those pages are billings for legal work related to a National Park Service contract and a Corps of Engineers contract (Bd. ex. 5, vol. III, tab 20-14 at 7-130). The 69 pages of legal billings related to Contract 2399 are in the total amount of $44,836 for work performed from 26 November 1996 to 28 February 1999 (*id.* at 1-6, 132-93). Obviously these legal costs were not incurred in the preparation and presentation of a termination settlement claim that arose no earlier than 28 September 2011 when the default termination was converted to a convenience termination. On this record, ESCI has failed to prove settlement expenses in any amount.

38. For Item 13, "TOTAL (Items 11 and 12)," ESCI claims $1,113,373.81 in its 5 July 2012 claim and $253,605.05 in its 2 July 2014 amended claim. We have found above that Item 12 has not been proven in any amount. Accordingly, Item 13 remains $191,976.40.

15

39. For Item 14, "SETTLEMENT WITH SUBCONTRACTORS (from Schedule F)," ESCI claims $252,503.97 in its 5 July 2012 claim and $110,931.40 in its 2 July 2014 amended claim. In Schedule F of both claims ESCI lists only one subcontractor, Rickmond Environmental, Inc. At hearing, Rickmond's president testified that Rickmond never submitted a termination settlement claim to ESCI nor did it ever receive a termination settlement payment from ESCI (tr. 2/227-28, 239). Regarding the source of the claimed settlement with Rickmond, the DCAA auditor testified at hearing that the matter was discussed at the 22 August 2013 walk-through meeting with ESCI's president as follows:

> Q. To what extent were you able to inquire about the $252,000.00 amount that appears in the claim for a subcontractor termination settlement? Did you get that far?

> A. We did. We inquired about that amount and Mr. Nwogu informed us that there wasn't a subcontractor proposal that he estimated the cost for him to complete that particular effort based upon contract price, he stated that it was work that he lost out on because another contractor performed the effort and therefore, he priced that work using the contract price as assuming that he completed the work. So that's how he derived the $252,000.00.

(Tr. 2/336-37) On this evidence, we find the "SETTLEMENT WITH SUBCONTRACTORS" item unproven in any amount.

40. For Item 15, "GROSS PROPOSED SETTLEMENT (Items 13 thru 14)," ESCI claims $1,365,877.78 in its 5 July 2012 claim, and $364,536.45 in its 2 July 2014 amended claim. Since we have found no incurred cost for a termination settlement with subcontractors, the proven gross proposed settlement remains at $191,976.40.

41. For Item 16, "DISPOSAL AND OTHER CREDITS (from Schedule G)," ESCI claims $182,511.19 in its 5 July 2012 claim, and no amount in its 2 July 2014 claim. On the Schedule G "DESCRIPTION," in the 5 July 2012 claim, ESCI stated "Amount of work not completed as of June 12, 1998," entered an amount of $95,000, and stated: "See Volume 1, II, & III and Rule 4 File Documentations. See Table 1 & II attached." There is no explanation for the difference between the $182,511.19 in Item 16 and the $95,000.00 in Schedule G or in the documents referenced therein. "DISPOSAL AND OTHER CREDITS" for purposes of a convenience termination settlement are described in the DCAA Contract Audit Manual in pertinent part as follows: "Credit amounts included in a settlement proposal normally represent: (1) an offer by the contractor to purchase inventory at less than cost, (2) the proceeds from

16

the sale of termination inventory, or (3) a combination of (1) and (2)." DCAAM, 7640.1, December 6, 2011. There is no evidence that ESCI retained or sold any termination inventory for its own use or took any other action for which a credit is due the government.

42. For Item 17, "NET PROPOSED SETTLEMENT (Item 15 less 16)," ESCI claims $1,183,366.50 in its 5 July 2012 claim, and $364,536.45 in its 2 July 2014 amended claim. Since we have found no basis for Disposal and Other Credits in this record, the proven net proposed settlement remains no greater than $191,976.40.

43. For Item 18, "ADVANCE, PROGRESS & PARTIAL PAYMENTS (from Schedule H)," ESCI left the item blank in both its 5 July 2012 claim and its 2 July 2014 amended claim. The evidence shows that four progress payments in the total amount of $213,217.80 were made in 1996 and two progress payments in the total amount of $90,772.20 were made in the first five months of 1997 for a total amount of $303,990.00. (R4, tabs 13, 57, 73, 89, 113, 125)

44. For Item 19, "NET PAYMENT REQUESTED (Item 17 less 18)," ESCI claims $1,183,366.50 in its 5 July 2012 claim and $364,536.45 in its 2 July 2014 amended claim. However, since the progress payments paid by the government to ESCI ($303,990.00) are greater than the total amount of the proven incurred cost, reasonable profit and termination settlement expenses ($191,976.40), we find no net payment due ESCI under the terms of the Termination for Convenience clause of the contract.

## DECISION

The Default clause in Contract 2399 states that if a termination for default is subsequently reversed, the termination will be considered as a termination for convenience. The Termination for Convenience clause in Contract 2399 states that if the parties cannot agree on a termination settlement, the contracting officer will issue a decision determining the settlement based on "the cost" of the terminated work, a reasonable profit on that cost, and the contractor's reasonable settlement expenses. The Termination clause further provides that the settlement, excluding the settlement expenses, cannot exceed the contract price and that the costs will be determined under the FAR Part 32 allowable cost provisions for cost reimbursement contracts. (*See* findings 4, 5)

The precedent is well established that when a fixed-price non-commercial items government contract is terminated for convenience, it essentially becomes a cost reimbursement contract. *D.E.W., Inc. and D.E. Wurzbach, A Joint Venture*, ASBCA Nos. 50796, 51190, 00-2 BCA ¶ 31,104 at 153,632; *Durette, GmbH*, ASBCA No. 34072, 91-2 BCA ¶ 23,756 at 118,972; *R.G. Robbins & Co.*, ASBCA No. 27516, 83-1 BCA ¶ 16,420 at 81,691-92. Due to the termination, ESCI is entitled to receive

its "costs" of performing the work terminated, not its "price." *SWR, Inc.*, ASBCA No. 56708, 15-1 BCA ¶ 35,832. The precedent is also well established that a contractor terminated for convenience "bears the burden of proving the fact of loss with certainty, as well as the burden of proving the amount of loss with sufficient certainty so that the determination of the amount...will be more than mere speculation." *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 767 (Fed. Cir. 1987) (citing *Willems Indus., Inc. v. United States*, 295 F.2d 822, 831 (Ct. Cl. 1961), *cert. denied*, 370 U.S. 903.

ESCI's 5 July 2012 termination settlement claim was found by the DCAA to be a price-based claim, and the DCAA "disclaimed" any audit opinion on the claim. At hearing the DCAA auditor testified that the 2 July 2014 amended claim was also a price-based claim. In response to the government's discovery request and the Board's discovery order, ESCI among other things, (i) admitted that it did not maintain a job cost ledger, (ii) provided gross payroll records that did not identify the job(s) on which the employee was being paid, and (iii) provided copies of checks payable to a subcontractor and vendors that for the most part were unsupported by invoices.

Based on the findings above, ESCI has failed to carry its burden of proof for the net settlement payment claimed under either its 5 July 2012 termination settlement claim or its 2 July 2014 amended termination settlement claim. ESCI's termination settlement expenses are not proven in any amount, and the proven costs of the terminated work with a reasonable allowance for profit ($191,976.40) do not exceed the progress payments already paid to ESCI by the government ($303,990.00).[9]

---

[9] The government moves in both its main and reply briefs for the sanction of dismissal of the appeal on grounds of (i) the "outrageous pre-trial antics" of ESCI's president, including unfounded attacks on counsel, refusal to cooperate with DCAA and government counsel in discovery, and physically accosting a DCAA auditor, and (ii) at hearing giving slanderous and perjured testimony against a Naval Officer who was not present (gov't main br. at 32-35; reply br. at 2-10). In light of our decision on the merits of the appeal, we find the motion to dismiss moot. However, we note that at hearing the testimony against the Naval Officer (tr. 1/210-22) was convincingly rebutted by two credible witnesses (tr. 2/210-21, 223-24).

18

## CONCLUSION

The appeal is denied.

Dated: 2 March 2015

MONROE E. FREEMAN, JR.
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58343, Appeal of Environmental Safety Consultants, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals